T. D. Womac et al.

*v,*

W. L. Casteel

(*Knoxville,* September Term, 1955.)

(May Session, 1956)

Opinion filed July 20, 1956.

Tom Taylor and Duggan & Washington, Athens, for petitioner W. L. Casteel.

Kramer, Dye, McNabb & Greenwood, Knoxville, and Candler & Hitch, Athens, for petitioner C. V. Rogers.

Milligan & Milligan, Chattanooga, and Frank N. Bratton, Athens, for respondent T. D. Womac.

Mr. Justice Swepston delivered the opinion of the Court.

W. L. Casteel brought this action against defendants Womac and Rogers, to recover damages for personal injuries alleged to have been suffered as a result of a three-car collision while he was riding as a guest of Womac. He obtained a jury verdict and a judgment for $12,500 against both of the above named defendants, which judgment was reversed and remanded for a new trial by the Court of Appeals for the failure of the Trial Judge to give two special requests offered by one of the defendants.

Both the plaintiff and the defendant Rogers have filed petitions for *certiorari,* and the writ was granted. We now dispose of the case.

The plaintiff, Casteel, was a guest in the car of Womac and they were on their way back from Chattanooga, where they had been to a union meeting and were returning to Athens on Highway No. 11, and hence were traveling in a northeasterly direction. The time was September 4, 1953, at about 10:30 p.m., on a dark rainy night. The accident took place on a straight stretch of asphalt highway between two curves at the tops of two rises separated by about 1,000 feet. Double yellow lines ran the entire distance between these curves. As Womac proceeded northeasterly towards Athens he was followed by one or more vehicles, one of which was the vehicle belonging to one Nesmith. There was also one vehicle in front of Womac. Nesmith pulled out of line over to

the left side of the road and attempted to overtake and pass Womac. At this instant Rogers came over the rise from the east headed in the southwesterly direction at about 40 miles per hour when, according to the plaintiff's testimony, these two cars were 500 feet or more from the Rogers' car coming from the opposite direction. Nesmith did not—or could not—pull back in line to his right side of the road but drove on ahead some 100 to 120 feet, and then pulled over almost off his left side of the road, so that only the rear end of his car was sticking over the pavement about 3 feet. The Rogers' car, without slackening speed, came on down-grade until it struck the right rear of the Nesmith car a glancing blow, causing Rogers' car to skid sideways and into the left-front of the Womac car. As a result Casteel suffered injuries.

Nesmith was not sued. Womac and Rogers each having been so required—plead specially among other things that the negligence of Nesmith in crossing the double yellow lines and attempting to pass cars from the rear at or near the crest of the rise was the direct and proximate cause of the accident without fault or negligence on the part of either Womac or Rogers and, therefore, further plead the doctrine of sudden emergency.

██ The Court of Appeals correctly held that there was evidence to take the case to the jury as to both defendants Womac and Rogers, and also correctly held that the question of the application of the doctrine of sudden emergency was a question for the jury. All of defendants assignments in this regard are overruled.

Plaintiff testified in substance that after Nesmith pulled out of line trying to overtake and pass, Womac said he wasn't going to let him back in line.

The Court of Appeals then—with reference to the two special requests—said: "It is apparent from reading the record as well as from the special pleas interposed by both defendants that it was their insistence throughout the trial that, in crossing double yellow lines and attempting to pass under all the prevailing conditions, Nesmith was guilty of negligence and that this act on his part was the sole cause of the collisions. In the general charge, although references were made to other theories of defendants, there was no reference to this particular theory. The Court was thereupon requested to charge:

" 'I further charge you that both defendants, Womac and Rogers, insist that the negligence of Lonnie Nesmith was the prime and proximate cause of the injuries suffered by the plaintiff. If you find by a preponderance of the proof that Lonnie Nesmith was guilty of negligence on the occasions of the accident and that such negligence of Nesmith was the prime and proximate cause of the injuries suffered by plaintiff and that the defendants or either of them were not guilty of any negligence that proximately caused or contributed to the injuries of the plaintiff, then such defendant or defendants whom you find not guilty of negligence would not be responsible for the injuries of the plaintiff.' "

The second special request was the same in substance as this.

The Court of Appeals further said: "The Court declined to charge the request on the ground that it was not a question whether some person not a party to the suit was negligent but whether the defendants or either of them was guilty of proximate negligence.

"The special request, it will be observed, did not ask the court to relieve defendants of any proximate negligence which the jury might find to exist on the part of either of them whether or not concurring with that of Nesmith. The request was to have the jury instructed as to defendants' theory that the negligence of Nesmith was the prime and proximate cause of the collision and that *if* the jury should also find that neither defendant was guilty 'of any negligence that proximately caused or contributed to the injuries of plaintiff' then a verdict should be rendered in behalf of such defendants or defendants as might be found free of proximate negligence.

"It seems to us the jury could hardly have escaped the conclusion that Nesmith was guilty of negligence and that his negligence was a proximate cause of the collision. Since the Court covered other theories of defendants in the general charge and was silent as to this particular theory the jury may have concluded that the court regarded Nesmith's negligence as immaterial. By refusing to charge the request, defendants were effectually deprived of a valid defense.

"Although defendants were not required to show that Nesmith's negligence was a proximate cause of the collision, we think they had a right to try to convince the jury that not only were they guilty of no proximate negligence but that Nesmith's negligence was the sole proximate cause of the collision. Included also is the question of remoteness in point of causation of any negligence on the part of defendants or either of them."

It seems to us that the Court of Appeals was in error in saying that the Court charged the theories of the defendants in the general charge other than this particular theory that Nesmith's negligence was the sole

proximate cause. Actually the Trial Court did not undertake to state the theory of either the plaintiff or the defendants other than to read the statutes applicable to the statutory count of the declaration. He simply referred the jurors to the pleadings which had been read by respective counsel. The Court said, "The defendants, and each of them, have interposed certain pleas to this declaration, and those pleas likewise were read to you at the beginning of the trial. * * *." Again, "It also necessarily follows that if the evidence should preponderate in favor of the contention of both defendants, or if you find that it is evenly balanced as between the plaintiff's contention on the one hand, and the contention of the defendants on the other hand, then in such case as that the plaintiff's action would have to fail against both defendants and you would return a verdict in favor of both defendants." Again,—"Now Gentlemen, as already indicated to you, this case is based upon the law of negligence, Mr. Casteel insists that he has been injured by the negligence of both of these defendants, and that all of his damages were proximately and directly caused by the negligence of the defendants; and the defendants insisting, of course, on their side, that they have not been guilty of any negligence which caused or contributed to the causation of the plaintiff's injuries."

The Court then charged correctly on the proximate cause and concurrent negligence.

The Court then, without actual mention of the man, Nesmith, used language which could not be applicable to any person other than Nesmith, as follows: "I instruct you, gentlemen of the jury, that it is the duty of the driver of every motor vehicle upon the highway to keep to the righthand side of the road or highway except upon

one-way streets. When vehicles meet, each driver is required to take the righthand side of the road and stay there and give the other half of the road to the driver coming from the opposite direction so as not to interfere in passing, and in order that the passing may be accomplished safely for all concerned.

"And I also instruct you that before attempting to overtake a vehicle traveling in the same direction it is the duty of the person overtaking the vehicle in front of him to see to it that such passing may be accomplished in safety for all concerned before undertaking to do so."

It, therefore, seems to us that the theory of the defendants was clearly covered in the general charge and for that reason alone it was not error to refuse either of the two special requests. Moreover, since the general charge was full and fair and complete, it would seem to have been placing undue emphasis on this particular defense of the defendants by giving the same at the end of the general charge.

The Court also charged fully the law with reference to the doctrine of sudden emergency relied on by the defendants. It seems clear that the Court did not undertake to charge the theories of any of the parties but simply charged the applicable law and left it up to the lawyers to state the theories of their respective clients, which was the situation in *Simpkins v. Manners,* 34 Tenn. App. 244, 247, 236 S.W.2d 984, and in the case of *Union Transfer Company v. Finch,* 16 Tenn.App. 293, 64 S.W. 2d 222, and *St. Louis, I. M. & S. R. Co. v. Hatch,* 116 Tenn. 580, 94 S.W. 671, 674, in which last case the Court said:

"But it is said on the part of the Pullman Company that the trial judge was in error in declining to give cer-

tain special requests that were submitted by its counsel. These requests embraced the theory of that company upon certain proven facts with the propositions of law which it sought to have applied to that theory. Granting that they were entirely sound, yet we think that the trial judge cannot be put in error for declining to give these, inasmuch as he did not undertake to state the theory of either party to the lawsuit, but laid down, in general terms, and with unusual clearness, sound propositions of law which would guide the jury in reaching a correct solution of the case, as they might adopt the theory of facts of the plaintiffs or of the defendant.''

Casteel complained also of the holding of the Court of Appeals that Rogers was entitled to the benefit of the two special requests above referred to that were submitted by Womac only, and not by Rogers.

We do not find any merit in this complaint. The Court of Appeals correctly said:

■ ■ ''It is true the requests dealing with the act of Nesmith in attempting to pass are labeled as special requests of defendant Womac. However, they purport to cover the theory and insistence of both defendants and we think this is sufficient. The purpose of the rule requiring special requests is to call the Court's attention to deficiencies in the charge and when this has been done by one defendant in a manner appropriate to other defendants, duplication of requests is not required to meet the intent and purpose of the rule.''

It, therefore, seems clear that the Court of Appeals was in error in reversing and remanding the case for a new trial.

■ The Court of Appeals having determined that the case should be reversed and remanded for a new trial

did not pass on certain other assignments of error of the defendants. They insist that the Court was in error in not charging on contributory negligence of the plaintiff. We find no merit in this because there is no evidence, whatever, of same, hence such a charge would be erroneous as not relating to any evidence in the case.

. Both defendants complain also of the failure of the Court to direct a verdict in their favor. What we have said above is adverse to this contention and disposes of the same.

■ Both defendants complain of the excessiveness of the verdict. We find no merit in this because as delineated in the brief of the plaintiff, the special damages proved amount to $4,465. In addition to that, the medical proof shows that the plaintiff has a damaged disk in the lumbar spine area that prevents him from doing any sort of heavy work and will prevent him from continuing to climb steel towers for the purpose of painting them such as he has been doing for the TVA, and of course, he is not able to lift anything heavy and still suffers continuous pain. There is no proof that he is a malingerer but everyone gave him credit for honesty and truthfulness.

The defendant Rogers complains of the following part of the charge of the Court:

"It is the duty of every person operating a motor vehicle upon the highways to keep his machine at all times under such ordinary and reasonable control that he may be able to stop and avoid collision with other persons using the highway. He cannot assume *at any time or place* that the road is clear or that it is going to be clear *at any time or place,* but must at all times and under all circumstances anticipate and expect the presence of

others upon the road. And while he has a right to presume that others using the highway will use due care and will obey the law, he nevertheless is under exactly the same duty himself with respect to everyone else upon the highway, taking into consideration the character of the highway * * *, the character of the road, and all other circumstances just as they existed at that time and place.''

The Court of Appeals said, ''The charge, in the abstract, is a correct statement of the law. *Coca Cola Bottling Works v. Brown,* 139 Tenn. 640, 645, 202 S.W. 926; *Coleman v. Byrnes,* 34 Tenn.App. 680, 699, 242 S.W. 2d 85. However, as applied to defendant Rogers, if construed to mean that he was required to anticipate meeting two cars abreast when he rounded the curve we think the italicized portion of the charge is incorrect. * * *''

This statement was made by the Court of Appeals with the view in mind that the case would be retried and that any error in this regard with reference to Rogers would be avoided.

▆▆▆ However, Rogers cannot now complain because if it was in any way meager or insufficient as applied to him, it was his duty to offer a special request clarifying the application as to him and having failed to do so, he cannot now complain. There is no positive error of law as was the situation in *McClard v. Reid,* 190 Tenn. 337, 229 S.W.2d 505.

The judgment of the Court of Appeals is reversed and the judgment of the trial court affirmed. .